## SOUTHERN PAC. CO. v. TARIN.

(Circuit Court of Appeals, Fifth Circuit. April 30, 1901.)

### No. 1,021.

CARRIERS—INJURY OF PASSENGER—FAILURE TO WARN PASSENGER OF DANGER.
   Defendant's railroad train encountered a washout, and, going too close to the breach in the track, the engine overturned. The cars were pushed back some distance, and a brakeman was sent to get the passengers out, as the water was running alongside the track, and washing away the embankment. He made the announcement, but plaintiff's wife and another passenger, who did not understand English, remained in the car, and no further attempt was made to remove them, although the cars stood upon the track for 30 or 40 minutes, when they overturned, and plaintiff's wife was injured. *Held*, in an action to recover for the injury, that, on evidence showing such facts, it was not error to direct a verdict for plaintiff.

In Error to the Circuit Court of the United States for the Western District of Texas.

T. J. Beall and Wyndham Kemp, for plaintiff in error.
Geo. E. Wallace, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge. Jose Tarin brought this action to recover damages of the Southern Pacific Company for personal injuries sustained by his wife, Rosa Tarin, while a passenger on the company's railroad train near Stanwix, in the territory of New Mexico. The accident occurred on July 19, 1899. The petition charges that, through the gross negligence and carelessness of the company and its servants, the car on which the plaintiff's wife was a passenger, and the train to which it was attached, was run off the track, and thrown from the roadbed, and turned over from the embankment, and that Rosa Tarin was thereby thrown with violence against the seats and sides of the car, and seriously and

permanently injured. It charges, further, that the portion of the track at the point where the injuries were received was defective, unsafe, and dangerous for trains to pass over; that the train was negligently and carelessly operated thereon, and the defendant's servants were careless and unskillful in failing to keep a proper lookout, or failing to make proper inspection, in order to discover the condition of the track and avoid accident and injury, and that after the train had been run to this part of the track, and the employés had discovered that they had run into a washout, they backed the train for some distance, and ordered the passengers to alight; that the plaintiff's wife being unable to understand or speak the English language, and ignorant of the fact that the train had run into a washout and was about to be wrecked, remained in the car in which she was riding; that after she had remained in the car about 30 minutes, and as she was attempting to leave her seat and ascertain the cause of the stopping of the train, the car in which she was riding suddenly, and without warning, fell, and was thrown from the track and roadbed and overturned, and she was injured; that the defendant company and its servants were guilty of gross negligence in stopping the train and the car in which the plaintiff's wife was riding, at the place where the track was out of order and liable to be washed out, without notifying her of this fact, and assisting her to dismount from the car, and leave her seat in the car, and go to a place of safety; that, after the car had been stopped, the defendant company and its servants knew that the plaintiff's wife was still in the car, and knew that the car was liable to be overturned and wrecked, and, knowing this, carelessly failed to notify her of the danger, or to remove her out thereof to a place of safety. The company pleaded the general issue, and for further answer specially alleged that if the plaintiff's wife was a passenger on its train at the time and place alleged in the petition, and was injured as therein alleged, which is not admitted, but denied, she sustained the injuries, not by reason of any fault or negligence on the part of the company or its servants in the operation of its train, but that the same was the act of God; that on or about July 19, 1899, while the defendant's train was approaching the bridge near Stanwix, the engineer operating the engine drawing the train discovered a washout, and water running over the bridge; that in the exercise of due care and caution the engineer began to back up the train to get out of danger, when suddenly and unexpectedly an extraordinary and unusual torrent of water, caused by a waterspout, struck the side of the railway track, thereby undermining the train, and causing the engine, baggage car, smoker, and day coach to overturn into the water; that the accident to the train was not caused by any fault of the defendant or its servants, nor was the same due to any defect in the construction of its track, but was caused by an unusual and unprecedented cloud-burst and rainfall, which caused the heavy torrent of water to rush from the hillside against and under the railway track; and that the injuries, if any, received by the plaintiff's wife were the result of an unavoidable accident. The court instructed the jury that, "under the

facts of this case as developed by the undisputed testimony, the court feels constrained to charge you that the defendant is liable to the plaintiff for damages sustained, if you find from the testimony that Rosa Tarin, the wife of the plaintiff, was injured in the accident about which the witnesses have testified." There was a verdict and judgment for the plaintiff, and the company assigns that the court erred, to its prejudice, in instructing the jury as above recited.

The proof does not tend, in our view, to sustain the special defense made by the plaintiff in error. Taken as a whole, the defendant's testimony clearly shows that just before the train got to Stanwix the engineer discovered red lights of the work train closer to the switch, that there was an opening in the track, and that he ran down pretty close to that, and stopped, and the conductor went ahead to see what was wrong. When the conductor came back, they made an effort to back the train and get it into a safer place. Almost immediately thereupon the engine turned over, carrying with it one or more of the cars attached to it, but leaving the body of the train standing. The crew, with the help of the passengers, began pushing the cars back, at which they were engaged for 30 or 40 minutes. The conductor sent a brakeman through the train to notify the passengers and get them out. He did not speak Spanish, and the plaintiff's wife did not understand English. There was ample time to get all of the passengers out, and easy to get them to a place of safety. They all did get out, except the plaintiff's wife and one other, and none of those who got out was hurt. The dump on which the track was laid was only $2\frac{1}{2}$ feet high. The train stood on it 30 or 40 minutes, with the water running, not over it, but along one side of it, and washing the earth from under the ends of the ties, until this wash had so far advanced that the train turned over. No feature of a cloud-burst or of an excessive fall of rain, there or near, is shown by direct evidence, or by the effect of the water on the track. Some of the witnesses use those terms, but their testimony shows the impropriety of their use. The track was protected at this point by wings constructed to conduct the water to the culvert, where it could pass through. While the train was standing these wings became full, and the one nearest to the train gave away, and there was, of course, a rush of water from that giving away of the wing. But there is nothing in the testimony, when properly analyzed, to bring the occurrence within the defense attempted by the company.

We think the circuit court did not err in the charge given to the jury, and therefore its judgment is affirmed.